## SMITH v. ST. PAUL FIRE & MARINE INS. CO.
### No. L–7579.

District Court, E. D. New York.

Feb. 15, 1943.

See, also, 46 F.Supp. 935.

William Otis Badger, of New York City, for plaintiff.

Bigham, Englar, Jones & Houston, of New York City (John M. Aherne, of New York City, of counsel), for defendant.

BYERS, District Judge.

Seemingly the only issue which arises on this motion to state the accounts of the plaintiff in her individual capacity concerns the item of $5,301.34, being cash in the bank account of the Smith Agency on the day that Mrs. Smith took over the Agency and operated it as an individual enterprise.

There is no doubt that the money was there, and was used in the prosecution of the Agency affairs until the plaintiff relinquished the business.

It is asserted on her behalf, that the bank credit was an asset of her husband, and

passed to his executor, and has been computed by the latter in arriving at the deficiency heretofore established. The result is that a charge against the estate has been established, and that, if the same item were now to be accounted for by the plaintiff in her individual capacity, there would result, in effect, two liabilities based upon the same item.

I do not so understand the matter, because we are dealing with two separate activities: (a) That of the decedent, and (b) that of his wife in her individual capacity.

If the executor were a trust company, for instance, the complication would disappear:

The executor would account in the Surrogates Court, charging itself with the $5,301.34 item as cash in the testator's hands at his death. In its credit schedule, it could carry that item as receivable from the plaintiff who used it in carrying on the business.

It may be assumed that the executor would show a condition of insolvency on the part of the testator, since the only asset is said to be the Agency which is demonstrated to have been insolvent by the margin elsewhere shown.

■ The plaintiff's individual responsibility for running the Agency is measured by what she received, which included the said item, plus what she collected in operating the Agency; and, as an offset against the sum of those two, what she delivered to the principal, what she earned as commissions, and what she had on hand when she closed the business. That is the statement contained in the moving papers, and is not challenged as to the figures.

■ The item of commissions earned by the plaintiff is $3,058.40, and to that extent, in theory, she could have reimbursed the executor on account of the $5,-301.34 which in effect she borrowed in order to operate the Agency. The difference is $2,242.94. To that extent she may be unable to reimburse the executor, but that is something for the latter to explain to the Surrogates Court.

If the Agency had possessed no cash at the time the plaintiff undertook to operate it personally, she would have had to borrow the funds needed to finance its requirements; at some time she would have had to repay that loan.

Instead of which, she took over the bank balance and used it to keep the Agency in existence, and confusion will be avoided in dealing with the results of that activity, if there is continued recognition of the separate status of the individual and the executrix.

What she owes the defendant as the result of operating the Agency is one thing. What the executor may be embarrassed in accounting for is another thing.

■ It is true that the indebtedness of *the decedent* to the defendant is measured by the difference between *his* collections as agent, and *his* remittances to his principal. His cash in bank on July 31, 1937, necessarily entered into the computation of the shortage established as of that date, and presumably the cash in bank was there because Smith had collected premiums in part represented by it.

Instead of the bank balance's being used to establish two charges, however, what really happened is that it entered into the computation which resulted in establishing his financial obligations to his principal, the defendant. That was one transaction.

■ That bank balance was taken over by the plaintiff to enable her to function individually. That was a wholly different and independent transaction and in the legal sense is unrelated to the former. She could have opened a new bank account with her own funds, had she so chosen, in which case she would have accounted to the defendant only for premiums collected and remitted, so far as her financial operations were concerned, and any impairment of her capital would have been her own loss. Instead of that, she used a bank balance already in existence, which was an Agency property, and must now account for it precisely as for any other kind of Agency property which she employed in her own venture.

Finding no reason why the accounts of the plaintiff in her individual capacity as set forth in the moving papers should not be so stated, an order may be settled on notice, stating her account individually according to the showing in the moving papers.